**UNITED STATES of America, Appellee,**

v.

**Joseph F. ANZALONE, Appellant.**

**No. 85–1442.**

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1986.
Decided Feb. 5, 1986.

Edward Romano, Providence, R.I., was on brief, for appellant.

Maurice R. Flynn, III, Sp. Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN and ALDRICH, Circuit Judges, ROSENN,* Senior Circuit Judge.

COFFIN, Circuit Judge.

■■■ In this appeal from conviction of mail fraud in violation of 18 U.S.C. § 1341, appellant raises one principal issue: whether the court erred in admitting evidence of false applications for insurance policies and claims made thereunder, relating to seven companies not named in the mailing counts of the indictment. Several other more insubstantial issues are also raised. We affirm.

The indictment charged appellant with engaging in a scheme, beginning in 1973, to defraud insurance companies by lying about not (1) having preexisting coverage in effect, (2) having filed and collected on numerous past disability claims, and (3) having sustained numerous injuries in the past.

■■ Two of the seven companies, Prudential Insurance Company and Combined Insurance Company, were not named at all in the indictment. But information as to appellant's dealings with these two companies was necessary in order to establish the predicate for the subsequent fraudulent failures to disclose such information. As to this evidence, appellant's objection was that allowing evidence of the total amounts paid to appellant under these early claims, some $140,000, was not necessary to establish the facts that claims under these policies had been made and paid and was prejudicial.

But the indictment charged appellant with "substantially" understating his prior coverage, accidents, injuries, and claims. The amounts collected on the prior claims was relevant and necessary to indicate that appellant's subsequent misleadings were indeed "substantial" understatements. The facts as to these two companies, therefore, cannot be considered "[o]ther crimes, wrongs, or acts" within the bar of Fed.R. Evid. 404(b). The evidence is clearly not only relevant but an indispensable part of the prosecution's case.

■■■ The evidence as to the five other companies stands in a somewhat different

posture. These companies were named in the indictment as having been victims of appellant's failures to disclose prior coverage, claims, and injuries. Largely because these incidents took place prior to the five-year limitations period preceding the indictment, these companies were not named in the mailing counts.

While appellant argues that the court did not conduct an appropriate balancing of relevance against prejudice under Fed.R. Evid. 403, the government contends that even though this evidence antedates the permissible limitations period preceding the indictment, it is direct proof of the continuing scheme and, as such, does not involve "other" acts or crimes within Rule 404(b). It also by implication argues that this evidence is not subjecting to balancing relevance and prejudice under Rule 403.

The government in effect argues that a prosecutor may introduce evidence of an unlimited number of prior and unprosecuted crimes, however remote, free of any weighing for excessive prejudice, so long as the similarity of the modus operandi indicates an identity of scheme. We think the argument overreaches.

Of course evidence is not rendered inadmissible simply because it relates to a period when prosecution is barred by a statute of limitations, *see United States v. Ashdown*, 509 F.2d 793 (5th Cir.1975). But, excepting the unique case of a conspiracy, where prior overt acts may be shown as part of the conspiracy, *States v. Seuss*, 474 F.2d 385, 391 (1st Cir.1973), and therefore do not constitute proof of an "other" crime, 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5239, p. 450, and the equally circumscribed case of a crime "that is so interwoven with the charged crime that it is impossible to prove one without revealing the other", *id.* at 448 [1], we find no justification for departing from subjecting evidence of earlier "other" acts to the Rule 404(b) test of determining whether they justifiably prove a "plan", *id.*, § 5244, pp. 499–503.

The Second Circuit recently reflected its reluctance to expand the kinds of cases

---

* Of the Third Circuit, sitting by designation.

1. Such "interwoven" cases, indeed, constitute the bulk of the government's authorities cited to us, *e.g., United States v. Leichtman*, 742 F.2d 598 (11th Cir.1984) (evidence of preexisting debt arising out of marijuana transaction necessary predicate to story of charged kidnapping con-

spiracy); *United States v. Torres*, 685 F.d 921, 924 (5th Cir.1982) ("sample" drug transactions, preceding the principal ones, "part of a single criminal episode"); *United States v. Killian*, 639 F.2d 206 (5th Cir.1981) (evidence of drugs and weapon seized was essential to proof of involvement in the instant conspiracy).

which can bypass the requirements of Rules 404(b) and 403. *United States v. Levy,* 731 F.2d 997, 1002–1004 (2d Cir. 1984). We share this reluctance. We also find ourselves in harmony with other circuits in similar situations in deeming evidence of prior acts which share a common modus operandi as putatively admissible to show "plan" under Rule 404(b) but also subject to balancing under Rule 403. *See, e.g., United States v. Miller,* 573 F.2d 388, 392 (7th Cir.1978) (false financial statements submitted to banks); *United States v. Matlock,* 558 F.2d 1328, 1331–1332 (8th Cir.1977) (false application for credit cards).

In the case at bar the trial court, although somewhat persuaded by the government's arguments, very wisely decided to touch all bases and finally balanced, saying:

"But all of this I have considered in my own mind. This man is charged with a scheme running over a period of at least 7 years. The jury would be warranted in finding that the scheme existed far longer than that period of time, that he was involved in a pattern of conduct to cheat insurance companies from 1965, assuming they accept all the evidence that the government offers. I think that the similarity of his conduct with respect to each of these companies and the lengthy period of time in which precisely the same type of act was involved is by no means unfairly prejudicial but is highly probative of what this man was doing.

"So, on the record there it is, if you want the so-called balancing act statement."

As we said in *United States v. Morris,* 700 F.2d 427, 431 (1st Cir.1983), "This is a responsibility committed to the judge's broad discretion." We agree that the balancing was not very lengthy or detailed, but counsel bears some responsibility. As Weinstein and Berger advise in their treatise,

"Since both sides will probably be aware of the possibility that the issue will arise, it should be adequately briefed before the judge must rule. More important than lists of cases in such a brief is the detailed analysis of the facts to show why the proof of other crimes is needed, why its use may be prejudicial and how some compromise or limitation may protect both parties." J. Weinstein & M. Berger, Weinstein's Evidence, § 404[18], p. 404–154, (1985). (Footnote omitted.)

We cannot find an abuse of discretion on this record.

Appellant's remaining arguments merit only the briefest of comments. His challenge to the sufficiency of evidence rests on two grounds. The first, that he was not identified by any of the companies named in the mailing counts, ignores the fact that some five witnesses identified appellant as the perpetrator of the defrauding scheme. The second ground attempts to dismiss the plethora of misrepresentations as immaterial, but the jury could well have found that policies would not have issued but for appellant's misrepresentations.

Appellant also claims that the court erred in allowing the prosecution to comment on appellant's failure to call a witness. But the court, on hearing counsel's objection, and the prosecution's explanation that the witness he had in mind was not defendant but a witness equally available to both parties, allowed the prosecution to "straighten it out". The prosecutor then repeated his intended meaning to the jury and defense counsel remained mute. Whatever remaining objection could have been made was not. The point was simply not preserved.

Finally, appellant claims error in the court's charge on this same point, arguing that the court improperly placed a duty on the defendant to call a witness. But the court clearly stated that "[The] defendant had absolutely no duty to put anybody on the stand". The court also ruled that the witness had been unavailable to defendant and that defendant had "the right to argue that you may draw an adverse inference, that is, that the witness's testimony would have been unfavorable, at least to some degree, had the government put that person on the stand."

*Affirmed.*