STATE OF NEBRASKA, APPELLEE, V. DAN REED, APPELLANT.
423 N.W.2d 777

Filed May 27, 1988.    No. 87-268.

Charles F. Fitzke, Scotts Bluff County Public Defender, for appellant.

Dan Reed, pro se.

Robert M. Spire, Attorney General, and Lisa D. Martin-Price, for appellee.

BOSLAUGH, CAPORALE, and SHANAHAN, JJ., and ROWLANDS, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Defendant, Dan Reed, appeals his conviction of the crime of felony theft, Neb. Rev. Stat. § 28-511(1) (Reissue 1985), and his sentence of 2 to 4 years' confinement. A jury was waived. We affirm.

The five errors assigned are that the trial court erred in (1) finding the defendant guilty on insufficient evidence, (2) overruling the defendant's motion for directed verdict or dismissal, (3) not making a finding concerning the amount of the theft, (4) allowing the admission of exhibits 1 and 2 at trial, and (5) sentencing the defendant to serve a term of 2 to 4 years, because the sentence is excessive and constitutes an abuse of discretion.

Dan Reed was a short-term resident of Scottsbluff, Nebraska, where he represented himself as engaged in the sale and installation of siding on houses. He did not have a permanent residence address, a vehicle registered in the county, a business location, nor an inventory of siding materials. In May 1984, Reed stopped at the home of James Marshall in Gering, having noticed that the Marshall house needed repairs. Reed left some siding samples with Marshall. Within a few days, Reed returned and measured the Marshall house. On May 17, 1984, Reed had a discussion with Marshall regarding siding for Marshall's house, culminating in the execution of a written agreement, signed by Marshall and Reed, to put siding on the Marshall house for $2,550. Marshall gave Reed his bank check for $1,750 payable to Reed Home Improvement-Dan Reed.

Reed told Marshall that he needed the money since he was going to Omaha to get the siding materials so that he could start on the job the following Monday. The agreement had no performance deadline. Marshall offered to give Reed a cashier's check, but Reed said that it was not necessary and that if needed, he could get one. The next day, Reed endorsed and cashed the check, and Marshall's bank account was debited $1,750.

About 10 days later, Reed contacted Marshall and requested an additional $200 for labor. Marshall refused. On about June 8 or 9, 1984, Reed contacted Mrs. Marshall by telephone and said that he understood that Mr. Marshall had suffered a stroke. Reed offered to return the $1,750, but Mrs. Marshall declined the offer and told Reed to put on the siding.

The siding was neither delivered nor installed, and no part of the $1,750 was returned to Marshall. Marshall endeavored to find Reed, since he had become suspicious of Reed's behavior. However, Reed could not be located in the Scottsbluff area. Marshall filed a report with the sheriff's office. A criminal complaint was filed against Reed on June 26, 1984. He was later located and arrested in Denver, Colorado, in the fall of 1985. At the trial, defendant offered no evidence on his behalf. During all of these proceedings defendant was represented by legal counsel. On appeal, defendant filed an additional brief, pro se.

At the conclusion of the State's case in chief, defendant moved for dismissal for failure of proof, which was denied.

Where a jury has been waived and the judge is the trier of the facts in a criminal case, the factual findings will not be disturbed on appeal unless they are clearly wrong. *State v. Laue*, 225 Neb. 57, 402 N.W.2d 313 (1987).

The first two assignments are discussed together.

The information charged that defendant, "on or about May 17, 1984 . . . did unlawfully and feloniously then and there take or exercise control over movable property of James Marshall, with the intent to deprive him thereof, to wit: cash in an amount of $1,750.00 . . . ."

Section 28-511(1) provides: "A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." A conviction under § 28-511(1) is a Class III felony when the

value of the property is over \$1,000; the value of the property is an element of the crime to be proven by the State; and the jury must make a finding of fact as to that issue. See *State v. Scott*, 225 Neb. 146, 403 N.W.2d 351 (1987).

In theft cases, it is necessary to consider the application of Neb. Rev. Stat. § 28-510 (Reissue 1985):

> Consolidation of theft offenses. Conduct denominated theft in sections 28-509 to 28-518 constitutes a single offense embracing the separated offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like. *An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under sections 28-509 to 28-518, notwithstanding the specification of a different manner in the indictment or information,* subject only to the power of the court to insure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

(Emphasis supplied.)

From the evidence, attention is directed to Neb. Rev. Stat. § 28-512 (Reissue 1985):

> Theft by deception. A person commits theft if he obtains property of another by deception. A person deceives if he intentionally:
>
> (1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise
> . . .
>
> . . . .
> The word deceive does not include falsity as to matters having no pecuniary significance, or statements unlikely to deceive ordinary persons in the group addressed.

The following statutory definitions found in Neb. Rev. Stat. § 28-509 (Reissue 1985) are relevant:

> (1) Deprive shall mean:

(a) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

(b) To dispose of the property of another so as to create a substantial risk that the owner will not recover it in the condition it was when the actor obtained it;

. . . .

(3) Movable property shall mean property the location of which can be changed . . . and documents although the rights represented thereby may have no physical location. Immovable property shall mean all other property;

(4) Obtain shall mean:

(a) In relation to property, to bring about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another . . .

. . . .

(5) Property shall mean anything of value, including real estate, tangible and intangible personal property, contract rights, credit cards, charge plates, or any other instrument which purports to evidence an undertaking to pay for property or services delivered or rendered to or upon the order of a designated person or bearer, choses in action and other interests in or claims to wealth . . .

(6) Property of another shall mean property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property . . . .

From the charges in the information, the evidence, and the applicable statutes, the State had the burden to prove beyond a reasonable doubt these elements: (1) Reed took and exercised control over property of another (Marshall); (2) Reed intended to and did obtain the property of another (Marshall) by deception, in that he created or reinforced a false impression of his (Reed's) intention or state of mind; (3) Reed intended to deprive Marshall of the property; and (4) the value of the property was in excess of $1,000.

Much of the proof of those foregoing elements must be found in the circumstantial evidence.

"[C]ircumstantial evidence is sufficient to support a conviction if such evidence and reasonable inferences that may be drawn from the evidence establish defendant's guilt beyond a reasonable doubt." *State v. Hunt*, 224 Neb. 594, 596, 399 N.W.2d 806, 807 (1987). The State is not required to disprove every hypothesis but that of guilt. *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984).

"The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident." *State v. Thielen*, 216 Neb. 119, 125, 342 N.W.2d 186, 191 (1983); *State v. Schott*, 222 Neb. 456, 384 N.W.2d 620 (1986).

It is the province of the Supreme Court, on appeal from a conviction, to refrain from resolving conflicts in the evidence and to sustain the judgment of conviction if, taking the view most favorable to the State, there is sufficient evidence to support the conviction. *State v. Zellner, ante* p. 272, 422 N.W.2d 96 (1988).

The following evidence and circumstances and their inferences support the proof of the charges in the information and defendant's guilt. Reed told Marshall that he needed $1,750 to purchase siding materials in Omaha so that he could start work the next Monday. There is no evidence that Reed either bought siding materials or delivered any to the Marshall residence. No siding work was performed, and no part of the $1,750 was returned to Marshall. Thereafter, Marshall became concerned about the siding job, his money, and his inability to locate Reed. Marshall reported the facts to the Scotts Bluff County sheriff's office. The sheriff's investigator, Alex Moreno, testified that he could find neither a residence nor a business address in Scottsbluff for Reed. No vehicle was registered in the county for Reed. Reed could not be located. Even his wife, Kim, denied knowing his whereabouts. After a criminal complaint was filed and warrant issued for Reed's arrest, he was not located until the fall of 1985, when he was arrested in Denver, Colorado.

After giving due regard to the caveat in § 28-512(1) that failure to perform a promise, standing alone, shall not be an

inference of intent to deceive, we conclude that the trial judge could find beyond a reasonable doubt that Reed took and exercised control over a $1,750 bank check which was converted into cash, the property of Marshall; that Reed obtained the confidence of Marshall, and he (Reed) created the continuing false impression that he intended to use the $1,750 to buy siding for the Marshall job; that Reed intended to and did obtain that property of Marshall's by deception; that Reed intended to deprive Marshall of such property; that the value of the property was in excess of $1,000; and that Reed was guilty of the felony offense charged in the information. Further, defendant's motion to dismiss made at the close of the State's evidence was properly denied. See *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987).

In his third assignment, defendant claims reversible error because the trial judge did not make a finding of the value of the property taken as required in Neb. Rev. Stat. § 29-2026.01 (Reissue 1985): "When the indictment charges an offense against the property of another by larceny, embezzlement or obtaining under false pretenses, the *jury*, on conviction, shall ascertain and declare in its *verdict* the value of the property stolen, embezzled, or falsely obtained." (Emphasis supplied.) As further authority, he cites *State v. Scott*, 225 Neb. 146, 403 N.W.2d 351 (1987), holding that the value of the thing must be established by the jury and included in its verdict. This has long been the law in this State. See *Fisher v. State*, 52 Neb. 531, 72 N.W. 954 (1897).

The problem with defendant's claim is that the authorities that he cites apply to cases tried to a jury and where the value is to be included in the jury's verdict; whereas here, defendant waived a jury trial and the trial judge was the trier of the facts. This difference is readily apparent when the purposes of § 29-2026.01 are understood, as they were known to the judge. By statute, crimes are classified between serious and minor offenses, all distinguished by the possible penalties that may be imposed. Neb. Rev. Stat. § 28-105(1) (Reissue 1985) describes six classes of felonies; Neb. Rev. Stat. § 28-106(1) (Reissue 1985) describes seven classes of misdemeanors. Neb. Rev. Stat. § 28-518 (Reissue 1985) grades theft offenses into four different

classes dependent upon the value of the thing (property) involved. For example, theft of property valued at over $1,000 is a Class III felony and theft of property valued at $100 or less is a Class II misdemeanor. In the event of a defendant's conviction in theft cases, the sentencing judge must know the value of the property as a guide to the possible maximum and minimum sentences. In jury trials, the jury must find the value of the property taken and convey that fact to the judge in its verdict. § 29-2026.01. In a theft case where a jury trial has been waived, the value of the property is one of the facts and elements of the crime to be determined by the trial judge, and § 29-2026.01 is not applicable. That is not to say that we discourage trial judges from making such special findings of value.

A recital in a journal entry appearing in the transcript is presumptively true unless it is overcome by an affirmative showing to the contrary in the bill of exceptions. See *State v. Painter*, 223 Neb. 808, 394 N.W.2d 292 (1986).

The transcript here shows the judgment, "It is therefore ordered, adjudged and decreed that the defendant is found guilty of the offense contained in the Information." This is more than a general finding of guilt. It made reference to the information, which alleged that the property was $1,750 in cash. By inference, it included a finding that the value of the property was over $1,000, and the State had proved all of the elements of the crime charged. Defendant does not dispute the value of the property. The failure of the trial judge to make a special finding of the value of the property was not error.

The fourth assignment concerns exhibits 1 and 2, which are photocopies of (1) the siding agreement and (2) the $1,750. check; both were identified by witness James Marshall as true and accurate copies of the originals, pursuant to Neb. Rev. Stat. § 27-901 (Reissue 1985). Defendant's objection for insufficient foundation, Neb. Rev. Stat. § 27-1004 (Reissue 1985), was sustained. Thereafter, the originals of both exhibits were made available for defendant's examination and inspection. There was no error in the reception of the exhibits in the absence of a renewed objection and a genuine challenge of the authenticity of the originals. See Neb. Rev. Stat. § 27-1003

(Reissue 1985).

Finally, defendant contends that his sentence was excessive and that it constituted an abuse of discretion on the part of the trial judge. The possible penalties for a Class III felony are a sentence of from 1 to 20 years of confinement, up to a $25,000 fine, or both. There is neither error nor abuse of discretion here, since the sentence, as reduced by 40 days' jail time, was well within the statutory limits. *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

The findings, judgment of conviction, and the sentence imposed were a proper performance of the trial judge's duties and functions.

AFFIRMED.