STATE OF NEBRASKA, APPELLEE, V. VICTOR SCHAAF, APPELLANT.

449 N.W.2d 762

Filed December 29, 1989.    No. 88-852.

Charles F. Fitzke, Scotts Bluff County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

After its complaint was filed on October 16, 1987, the State, in its amended information filed on January 12, 1988, charged that Victor Schaaf, in violation of Neb. Rev. Stat. § 28-511(2) (Reissue 1985), committed a theft of property, "valued at more than $1,000.00," which belonged to Lenhart Land and Livestock Company, that is, theft which occurred "on or about April, 1980 to January 7, 1985," in Scotts Bluff County, Nebraska.

A jury in the district court for Scotts Bluff County convicted Schaaf of felonious theft of property with a value of $404,504. Section 28-511(2) provides: "A person is guilty of theft if he or she transfers immovable property of another or any interest therein with the intent to benefit himself or herself or another not entitled thereto." Under Neb. Rev. Stat. § 28-518(1) (Reissue 1985), "[t]heft constitutes a Class III felony when the value of the thing involved is over one thousand dollars," and is punishable by imprisonment for a maximum term of 20 years, a fine of up to $25,000, or both such imprisonment and fine. See Neb. Rev. Stat. § 28-105(1) (Reissue 1985). The district court sentenced Schaaf to imprisonment for not less than 4 nor more than 8 years.

In his appeal, Schaaf contends that (1) the information by which he was charged is legally deficient; (2) the trial court lacked jurisdiction because no criminal act charged against Schaaf occurred in the State of Nebraska; (3) criminal

prosecution of Schaaf was barred by the 3-year statute of limitations prescribed by Neb. Rev. Stat. § 29-110 (Reissue 1985); (4) the evidence is insufficient for Schaaf's conviction; and (5) the sentence imposed is excessive.

## BACKGROUND FOR CHARGE

Gladyce Lenhart Heye owned shares of capital stock in Lenhart Land and Livestock Company (Lenhart Company), a Wyoming corporation which owned land and maintained bank accounts in both Wyoming and Nebraska. Schaaf was the accountant for Lenhart Company. By her last will and testament, Heye created a trust (Heye Trust) which included capital stock of the Lenhart Company; appointed Schaaf as trustee; and designated her brother, Robert Lenhart, and Robert's two children, Connie Lenhart Graybill and Pat Lenhart, as beneficiaries of the trust. The Heye Trust commenced after Heye's death in 1976. Schaaf accepted trusteeship of the Heye Trust in 1977, was elected to the board of directors for Lenhart Company, and became president, as well as treasurer and manager, of Lenhart Company, which paid him a monthly salary of $835 and reimbursed him for his expenses incurred in connection with corporate business. In his role as manager of Lenhart Company, Schaaf kept the corporation's books, exercised absolute control over corporate assets, and was the only person authorized to write corporate checks and manage corporate property. Schaaf, throughout his activities as an officer of the Lenhart Company, lived in Wyoming and from his Wyoming residence conducted business for the corporation.

In December 1977, Schaaf began to use Lenhart Company's funds as "loans" to himself, although he never signed a promissory note to the corporation for the funds "borrowed." The corporation's board of directors had not authorized any corporate loan to Schaaf, and Schaaf never informed the corporation's directors or shareholders that he was borrowing from the corporation. In the corporation's balance sheets and ledgers, corporate funds transferred by Schaaf were listed under "Savings and Time Certificates" rather than under "Accounts Receivable."

As a result of the U.S. grain embargo, Schaaf felt that the commodities market offered investment opportunities. Sometime in mid-1979, Schaaf formed a Wyoming partnership, "4-S Investments," which consisted of Schaaf, his wife, and their two children. The partnership had a checking account at the First National Bank in Mitchell, Nebraska, in Scotts Bluff County, the same bank in which Lenhart Company maintained its Nebraska checking account. In several transactions, Schaaf transferred funds of Lenhart Company through unauthorized checks which Schaaf made payable to himself, endorsed, and deposited in the checking account of 4-S Investments or by direct disbursement from the corporation's account to brokerages which maintained a commodities account for 4-S Investments, for example, Bache & Co. Apparently, all the transactions in question, which involved the bank accounts of Lenhart Company and 4-S Investments, were conducted without Schaaf's physical presence in Nebraska. Lenhart Company's funds transferred by Schaaf to 4-S Investments' account were then disbursed to the various brokerage houses which had handled commodities transactions for the Schaaf partnership. The partnership lost $379,430.90 in the commodities market. Between April 9, 1980, and January 7, 1985, Schaaf wrote 25 unauthorized checks on Lenhart Company's account for a total of $404,504, which was disposed as follows:

| Date | Amount | Disposition |
|------|--------|-------------|
| 4/9/80 | $ 56,484 | Deposit—4-S Investments Account |
| 4/17/80 | 50,000 | Deposit—4-S Investments Account |
| 5/1/80 | 6,000 | Deposit—4-S Investments Account |
| 5/9/80 | 20,000 | Deposit—4-S Investments Account |
| 5/29/80 | 10,000 | Deposit—4-S Investments Account |
| 6/4/80 | 6,000 | Deposit—4-S Investments Account |
| 6/12/80 | 10,000 | Deposit—4-S Investments Account |
| 11/10/80 | 12,000 | Deposit—4-S Investments Account |
| 11/21/80 | 14,000 | Deposit—4-S Investments Account |
| 12/1/80 | 12,000 | Deposit—4-S Investments Account |
| 2/3/81 | 8,500 | Deposit—4-S Investments Account |
| 3/20/81 | 7,500 | Deposit—4-S Investments Account |

| | | |
|---|---|---|
| 4/6/81 | 3,200 | Deposit—4-S Investments Account |
| 4/13/81 | 3,500 | Deposit—4-S Investments Account |
| 5/7/81 | 11,520 | Money wire to Bache & Co. |
| 6/12/81 | 3,500 | Deposit—4-S Investments Account |
| 6/24/81 | 17,800 | Deposit—4-S Investments Account |
| 8/23/82 | 6,000 | Deposit—Schaaf Personal Account |
| 9/17/82 | 10,000 | Deposit—4-S Investments Account |
| 11/24/82 | 20,000 | Deposit—4-S Investments Account |
| 2/23/83 | 2,000 | Deposit—4-S Investments Account |
| 6/2/83 | 100,000 | Deposit—4-S Investments Account |
| 9/3/83 | 5,000 | Deposit—4-S Investments Account |
| 2/23/84 | 6,000 | Deposit—Schaaf Personal Account |
| 1/7/85 | 3,500 | Deposit—4-S Investments Account. |

In 1986, Pat Lenhart, who had become suspicious of Schaaf's activities and management of Lenhart Company, contacted an attorney, who, on examination of the corporation's records and the bank accounts of Schaaf and 4-S Investments, discovered Schaaf's unauthorized use of Lenhart Company's funds. Schaaf resigned as a director and officer of Lenhart Company.

ADEQUACY OF THE INFORMATION'S ALLEGATIONS

Schaaf asserts that "[f]or the purpose of this case, at least, the elements of the crime charged were, then, the elements of theft as proscribed by Neb. Rev. Stat. Section 28-511(2) (Reissue 1985)," and then contends that the information failed to state "the date of the alleged offense [or] the value of that which was alleged to have been unlawfully transferred . . . ." Brief for appellant at 14. The State does not dispute Schaaf's characterization of the alleged theft by unlawful disposition of property in violation of § 28-511(2), which provides: "A person is guilty of theft if he or she transfers immovable property of another or any interest therein with the intent to benefit himself or herself or another not entitled thereto."

Neb. Rev. Stat. § 29-1501 (Reissue 1985) provides:

No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected . . . (3) . . . for omitting to state the time at which the offense was committed in any case where

time is not of the essence of the offense . . . nor for want of a statement of the value or price of any matter or thing . . . where the value or price . . . is not of the essence of the offense . . . .

In *State v. Willett*, 233 Neb. 243, 246, 444 N.W.2d 672, 675 (1989), we stated:

To charge a defendant with the commission of a criminal offense, an information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime or in language equivalent to the statutory terms defining the crime charged.

See, also, *State v. Turner*, 218 Neb. 125, 354 N.W.2d 617 (1984). Nebraska criminal procedure does not require a comprehensive and particularized factual description of elements for the offense charged in the information or complaint against a defendant. "[W]here an indictment, information, or complaint alleges commission of a crime, using the language of the statute defining that crime or terms equivalent to such statutory definition, a formal charge against an accused is sufficient." *State v. Wehrle*, 223 Neb. 928, 930-31, 395 N.W.2d 142, 145 (1986).

Under § 28-511(2) of the Nebraska Criminal Code, the elements of theft by unlawful disposition are (1) a person's unauthorized transfer of another's immovable property or unauthorized transfer of any interest in another's immovable property (2) with the intent to benefit himself, herself, or another not entitled to the property or any interest in the property. Cf. *State v. Hilpert*, 213 Neb. 564, 330 N.W.2d 729 (1983) (theft by deception, Neb. Rev. Stat. § 28-512 (Reissue 1985)).

Although this court has not expressly stated that time is not an essential element of theft, other courts, construing theft statutes substantially similar to § 28-511, have held that time is not an essential element of theft. See, *State v. Hatch*, 346 N.W.2d 268 (N.D. 1984) (exact time of the commission of theft is not a substantive element requiring proof to establish commission of the crime); *State v. Jamison*, 767 P.2d 134 (Utah App. 1989) (time at which a theft was committed generally is

not an element which must be established in proving commission of the criminal offense).

In *State v. Culver*, 233 Neb. 228, 231, 444 N.W.2d 662, 665 (1989), we stated: "The value of the property stolen is no longer an element of the crime [of theft] and is important only in determining the penalty." Cf. *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989) (value of property is not an element in the crime of criminal mischief, Neb. Rev. Stat. § 28-519 (Reissue 1985)). Therefore, we hold that neither the time of the criminal appropriation nor the value of the property criminally appropriated is substantive and, therefore, an element of the crime of theft prohibited by § 28-511.

Consequently, Schaaf's assignments of error that the information is insufficient on account of a failure to state the exact date of the criminal appropriation and the value of the property criminally appropriated are without merit.

## JURISDICTION OF A NEBRASKA COURT

Schaaf asserts that the trial court was without jurisdiction inasmuch as no crime of theft occurred in Nebraska, since Lenhart Company is a Wyoming corporation and Nebraska was not "impacted" by transfer of Lenhart Company's funds. Brief for appellant at 15. When some requisite elements of a crime are committed outside Nebraska, but an essential element of the crime is committed or occurs in Nebraska, a Nebraska court has subject matter jurisdiction for prosecution of a defendant charged with the crime. *State v. Hilpert, supra*; *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983). See, also, *State v. Roderick*, 9 Ariz. App. 19, 21, 448 P.2d 891, 893 (1968): "[I]f the requisite elements of a crime are committed in different jurisdictions, any state in which an essential part of the crime is committed may take jurisdiction."

In Schaaf's case, Lenhart Company's funds, or, more technically, credit from deposits in the checking account of Lenhart Company, existed at the First National Bank of Mitchell in Scotts Bluff County, Nebraska. Schaaf, without authorization, appropriated those funds or credits to his benefit, or to the benefit of one not entitled to such funds or credits, when Schaaf transferred the funds or credits from

Lenhart Company's account to his personal checking account or to the account of 4-S Investments for later disbursement to brokers who had handled commodities transactions for 4-S Investments. Thus, one of the essential elements of theft by disposition, that is, unauthorized transfer of another's property or interest in property, was accomplished by Schaaf's drawing checks on the Lenhart Company's checking account in a Nebraska bank and, by such unauthorized checks, transferring Nebraska funds of Lenhart Company, or the "interest" of Lenhart Company in such funds, to himself or 4-S Investments. Since such transfers of property occurred in Nebraska, a Nebraska court had jurisdiction for the prosecution of Schaaf on the charge of theft by disposition, a violation of § 28-511(2).

## STATUTE OF LIMITATIONS

Section 29-110 provides: "No person . . . shall be prosecuted for any felony . . . unless a complaint for the same shall be filed . . . within three years next after the offense shall have been done or committed . . . ."

The complaint filed against Schaaf on October 16, 1987, alleged that the theft occurred between April 1980 and January 7, 1985. Consequently, to timely prosecute Schaaf, the felony theft charged against Schaaf must have occurred not earlier than October 16, 1984. Yet, with the exception of Schaaf's appropriation of $3,500 from Lenhart Company's account on January 7, 1985, which was the last in a series of 25 misappropriations, all of Schaaf's 24 other misappropriations involving Lenhart Company occurred more than 3 years before the State filed its complaint against Schaaf.

The State contends that although only the 25th and last transaction was within the 3-year statute of limitations, the other transactions were not 24 separate thefts, but, rather, were a series of acts which constituted a "continuing offense" eventually completed on January 7, 1985. For that reason, the State argues, the statute of limitations for the collective and combined misappropriations began to run from January 7, 1985. Thus, if Schaaf's several acts constituted a continuing offense, as the State contends, the statute of limitations began to run from January 7, 1985, the date when the last act

occurred. Therefore, the real statute of limitations question presented in Schaaf's appeal is whether Schaaf's serial acts constituted one continuing offense of theft or 25 separate theft offenses.

Whether several acts in series constitute a continuing offense or separate offenses depends on construction of the statute defining the crime. *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982).

> A continuing offense is defined as a "continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences."

*State v. Williams, supra* at 655, 319 N.W.2d at 751 (quoting from 22 C.J.S. *Criminal Law* § 1 (1961)).

The U.S. Supreme Court, in discussing the doctrine of continuing offenses, has stated:

> [T]he doctrine of continuing offenses should be applied in only limited circumstances since, as the Court of Appeals correctly observed in this case, "[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." 410 F. 2d, at 1158. These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Toussie v. United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970).

There are no common-law crimes in Nebraska. *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989).

Immediately before legislative adoption of the Nebraska

Criminal Code in 1977, there existed Neb. Rev. Stat. § 28-538 (Reissue 1975), which described the nature of the criminal offense "embezzlement" and the various bases for conviction of that crime. Generally, § 28-538 pertained to persons in a fiduciary relationship, such as administrators of estates, agents, attorneys, corporate officers, executors for estates, factors, and guardians, who intentionally and without authorization converted to the fiduciary's use any money or property entrusted as the result of the fiduciary relationship. Noteworthy regarding the former crime of embezzlement is the provision in § 28-538:

> If money or property is so embezzled or converted by a series of acts during the same employment [i.e., during existence of a particular fiduciary relationship], the total amount of money and the total value of the property so embezzled or converted shall be considered as embezzled or converted in one act, and [the embezzler] shall be punished accordingly.

In Schaaf's case, the State suggests a "person in the position of trust is assumed to be carrying the duties of his position until at some point the person fails to properly account for the funds entrusted to him." Brief for appellee at 16. As support for its suggestion, the State points to *Bolln v. State*, 51 Neb. 581, 71 N.W. 444 (1897), *Chamberlain v. State*, 80 Neb. 812, 115 N.W. 555 (1908), and *Gorton v. State*, 117 Neb. 556, 221 N.W. 689 (1928). In *Bolln v. State, supra*, this court construed Comp. Stat. § 124 (1895), a criminal statute which proscribed embezzlement of public money and which was substantially similar to § 28-538. In affirming the conviction of Bolln, a public official convicted of misappropriating public funds, this court remarked: "The evidence shows that the embezzlement in the case at bar consisted of a continuous series of acts, committed at different times, but with a common purpose, and hence constitute a single offense." 51 Neb. at 594, 71 N.W. at 448.

Later, in *Chamberlain v. State, supra*, which involved a conviction of a bank employee for embezzlement, in violation of a statute similar to § 28-538, the court made the following observation:

> The crime, as in the case at bar, may consist of many acts done in a series of years, and the fact at last be discovered that the bank's funds have been embezzled, and yet it may be impossible for the prosecution to prove the exact time and manner of each or any separate act of conversion. In such a case, if the state should be compelled to rely for conviction upon a single act, the accused, although he might be guilty of embezzling large sums of money in the aggregate, would probably escape conviction. The law should not afford exemption from just and merited punishment on mere technical grounds which do not in any way affect the guilt or innocence of the defendant or the merits of the case.

80 Neb. at 820, 115 N.W. at 558. A conclusion similar to that in *Chamberlain* was reached in *Gorton v. State, supra*, where the court affirmed the conviction of Gorton, who had embezzled funds of a corporation for which he was an officer. In light of an embezzlement statute much like § 28-538, the *Gorton* court concluded: "Under a charge of embezzlement on a day named, evidence of a continuous series of accused's previous conversions in different amounts may support a verdict for the aggregate sum as a single embezzlement." 117 Neb. at 559-60, 221 N.W. at 690.

In a rush to rely on *Bolln, Chamberlain*, and *Gorton*, the State overlooks Neb. Rev. Stat. § 28-510 (Reissue 1985) of the Nebraska Criminal Code, which provides: "Conduct denominated theft in sections 28-509 to 28-518 constitutes a single offense embracing the separated offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like." Also, the State disregards the unequivocal language of § 28-511(2), which makes no mention of a fiduciary relationship as an element for the offense defined in § 28-511(2) (theft by disposition) and which contains no express provision for a continuing offense, such as the former crime of embezzlement, prohibited by § 28-538, which might involve the "total" of the property or money misappropriated during a fiduciary relationship and thereby constitute "one act" subject to criminal prosecution.

In *State v. Gainer*, 227 Kan. 670, 608 P.2d 968 (1980), the Supreme Court of Kansas affirmed dismissal of a theft charge because the Kansas 2-year statute of limitations barred prosecution for the offense, which was defined by Kan. Stat. Ann. § 21-3701 (1974): "Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property: (*a*) Obtaining or exerting unauthorized control over property . . . ." Gainer stole a firearm in January 1977 and hid the weapon in his attic. On April 30, 1979, a citizen reported that she had seen Gainer with the weapon. The theft charge was filed against Gainer in April 1979. The State contended that the theft was a "continuing offense" and was not completed so long as Gainer retained possession of the stolen firearm. The *Gainer* court noted that "[t]he State's position is that the statutory prohibition against '[o]btaining or exerting unauthorized control over property' includes within its proscription the continued unauthorized possession of the property after the initial theft," and commented:

> The concept of continuing offenses is essentially a legal fiction. Fictions are usually avoided in the criminal law. Perkins on Criminal Law, p. 263 (2nd ed. 1969). The courts have taken a very limited view of those crimes which constitute continuing offenses. Conspiracy is the most frequent example of a continuing offense. See Perkins on Criminal Law, p. 635. The continuing offense doctrine is usually advanced by the prosecution to avoid the running of the statute of limitations.

227 Kan. at 672, 608 P.2d at 970. After referring to *Toussie v. United States*, 397 U.S. 112, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970), the Kansas court concluded:

> All criminal offenses, except those considered continuing offenses, are committed when every act which is an element of the offense has occurred. Continuing offenses are committed when the course of prohibited conduct, or the accused's complicity therein, has terminated. To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of

conduct a continuing offense.

. . . .

We do not agree that a continuing offense was intended by the legislature when it defined the crime of theft. The use of the words "[o]btains or exerts control" was for the purpose of consolidating what were formerly the crimes of larceny and embezzlement into a single crime of theft. . . .

. . . .

. . . [W]e hold the crime of theft by obtaining or exerting unauthorized control over property with intent to deprive the owner permanently of the possession, use or benefit of his property as proscribed in K.S.A. 21-3701(*a*) is not a continuing offense.

227 Kan. at 673-74, 608 P.2d at 970-71. See, also, *People v. Steinmann*, 57 Ill. App. 3d 887, 373 N.E.2d 757 (1978).

We, also, recall the judicial admonition in *Toussie v. United States, supra* at 115, namely, the conclusion that a particular crime is a continuing offense "should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one."

With the former "embezzlement" statute, § 28-538, at hand, including that statute's express provision for a "series of acts" constituting "one act" or a continuing offense, the Legislature repealed § 28-538 in 1977 and immediately enacted the present Nebraska Criminal Code. When it enacted § 28-511 as a part of the Nebraska Criminal Code, the Legislature, through § 28-510, emphatically pointed out that theft, as an offense proscribed by the Nebraska Criminal Code, included certain former offenses defined in criminal statutes repealed by the Nebraska Criminal Code, for example, the former crimes of larceny, receiving stolen property, and embezzlement, which was defined by § 28-538. Wielding a legislative pen, the Legislature rewrote the criminal code for Nebraska and, consequently, redefined specific criminal offenses in Nebraska. Nevertheless, by overlooking the unequivocal language presently in the Nebraska Criminal Code defining theft by disposition and as a result of apparent indifference to historical

perspective for decisions of this court, which construed previous criminal statutes antedating Nebraska's current criminal code, the State misses the clear legislative intent reflected by § 28-511(2) (theft by disposition).

Nothing in the explicit language of § 28-511(2) compels the conclusion that theft by disposition is a continuing offense. If the Legislature had intended that a series of misappropriations be considered in the aggregate as one offense, such as in the provision which previously existed in the criminal statute defining the former crime of embezzlement in Nebraska (§ 28-538), the Legislature, through the rather simple process of explicit statutory language, could have inserted the "one act," or continuing offense, provision into § 28-511(2) of the Nebraska Criminal Code. In construing a penal statute, a court cannot supply language which is absent from the statutory definition for a criminal offense. *State v. Douglas*, 222 Neb. 833, 388 N.W.2d 801 (1986). In the absence of language constituting a "continuing offense" provision in § 28-511(2), we must conclude that the Legislature did not intend that a series of separate acts, each of which is a theft proscribed by § 28-511(2), constitutes one criminal act or a continuing offense of theft. Consequently, the offense of theft by disposition, prohibited by § 28-511(2), was committed each time that Schaaf, without authorization, transferred Lenhart Company's funds, or the corporation's interest in the funds, to himself or 4-S Investments with the intent to benefit himself or 4-S Investments, when neither was entitled to the property transferred. Inasmuch as Schaaf might have been prosecuted for each of the 25 transactions involving a misappropriation or unauthorized transfer of Lenhart Company's funds, the 3-year statute of limitations prescribed by § 29-110, barred prosecution of Schaaf for each transaction in question which occurred before October 16, 1984. Therefore, the only offense of theft by disposition which was subject to timely prosecution was the transaction of January 7, 1985—Schaaf's unauthorized transfer of $3,500 from the funds and checking account of Lenhart Company and deposit of those funds in the checking account of 4-S Investments.

## MISAPPROPRIATIONS OUTSIDE THE STATUTE OF LIMITATIONS

As an aspect of the statute of limitations question, Schaaf claims that "any 'theft' which occurred more than three years prior to October 16, 1987, was inadmissible for purposes of proof of a crime, and that it was, in fact, prejudicial error for the court to admit" evidence of transactions which occurred more than 3 years before the complaint was filed against Schaaf. Brief for appellant at 19.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1985).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1985).

Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1985), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Craig*, 219 Neb. 70, 77-78, 361 N.W.2d 206, 212-13 (1985), we stated:

> Rule 404(2) of the Nebraska Evidence Rules, as well as its pattern-counterpart, Rule 404(b) of the Federal Rules of Evidence, is an "inclusionary rule," permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. . . .
>
> Thus, under Rule 404(2) as an inclusionary rule, evidence of other acts may be admissible if such acts are relevant for any purpose other than to show a defendant's

propensity or disposition to commit the crime charged. However, Rule 404(2) is subject to the overriding protection of rule 403 of the Nebraska Evidence Rules (exclusion, if probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence). . . .

The "purposes" set forth in Rule 404(2) are illustrative only and not intended to be exhaustive or mutually exclusive. For instance, McCormick notes categories of permissible purposes beyond those designated in Rule 404(2) such as proof of passion, malice, or perspective . . . .

. . . .

Consequently, if there is a distinctive pattern or procedure utilized in separate crimes, the separate act or acts may have probative value in determining the guilt of the defendant.

Subject to the balancing test contained in Rule 403, evidence of prior crimes, wrongs, or acts which cannot be criminally prosecuted on account of the statute of limitations may be admissible under Rule 404(2). See, *United States v. Anzalone*, 783 F.2d 10 (1st Cir. 1986) (evidence of prior acts is not rendered inadmissible simply because it relates to a period when prosecution is barred by a statute of limitations); *United States v. Means*, 695 F.2d 811 (5th Cir. 1983) (the statute of limitations is not implicated insofar as the admissibility of other acts is concerned); *United States v. Garvin*, 565 F.2d 519 (8th Cir. 1977); *Adrian v. People*, 770 P.2d 1243 (Colo. 1989) (evidence of prior acts is not limited to incidents within the statute of limitations); *People v. Thoms*, 30 Ill. App. 3d 229, 332 N.E.2d 538 (1975). As the court correctly expressed in *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975):

The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence. It would be a bizarre result indeed if a crime properly prosecuted within the limitations period could not be proven because an

essential element, such as intent, could only be established by proof of incidents occurring outside the period.

The "other acts" involving Schaaf and Lenhart Company's checking account were not offered to show Schaaf's character or his propensity or disposition to commit the crime charged, theft by disposition. Rather, the several pre-1985 transactions whereby Schaaf misappropriated Lenhart Company's funds were relevant to prove the charge against Schaaf because those transactions showed a pattern of deliberate acts in Schaaf's protracted and executed plan for obtaining Lenhart Company's funds to benefit Schaaf and 4-S Investments in covering losses sustained in the commodities market.

Some of Schaaf's misappropriations of Lenhart Company's funds occurred almost 5 years before the last misappropriation in 1985. However, remoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence under Rule 404(2) and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible. *State v. Rincker*, 228 Neb. 522, 423 N.W.2d 434 (1988); *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984).

Evidence of other crimes, wrongs, or acts, otherwise admissible under Rule 404(2), may be discretionarily excluded pursuant to the balancing test contained in Rule 403. *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985); *United States v. Anzalone, supra*.

We find no abuse of discretion in the trial court's admitting evidence of Schaaf's misappropriations which occurred before October 16, 1984, as "other acts" in reference to the charge of theft by disposition, § 28-511(2).

## SUFFICIENCY OF EVIDENCE

In his penultimate assignment of error, Schaaf claims that the evidence is insufficient to sustain his conviction of felonious theft by disposition because it is "clear that, while, for the sake of argument, the transactions the defendant [Schaaf] entered into have been called 'thefts', they were not really thefts. [Schaaf] always considered them to be loans to himself. There

was no proof entered of record in that regard." Brief for appellant at 19.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987). See, also, *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989); *State v. Willett*, 233 Neb. 243, 444 N.W.2d 672 (1989).

On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*State v. Robertson*, 223 Neb. 825, 830, 394 N.W.2d 635, 638 (1986). See, also, *State v. Swigart, supra*; *State v. Willett, supra*.

Evidence supports the jury's finding that Schaaf was guilty of theft by disposition, in violation of § 28-511(2). Neb. Rev. Stat. § 29-2026.01 (Reissue 1985) requires a jury to "ascertain and declare in its verdict the value of the property stolen, embezzled, or falsely obtained." Therefore, to sustain Schaaf's conviction of theft as a Class III felony pursuant to the grade of theft designated in § 28-518(1), the State was required to prove, beyond a reasonable doubt, that the property which was the subject of the theft had a value in excess of $1,000. See, *State v. Redding*, 213 Neb. 887, 331 N.W.2d 811 (1983); *State v. Reed*, 228 Neb. 645, 423 N.W.2d 777 (1988). See, also, *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

By its verdict, the jury found that Schaaf was guilty of theft of Lenhart Company's property with a value of $404,504. In finding that Schaaf had stolen $404,504 from Lenhart Company, the jury necessarily included the $3,500 misappropriated by Schaaf from Lenhart Company's checking

account on January 7, 1985. Schaaf's assertion that the transactions in question were "loans" is an argument which the jury did not accept in its role as fact finder. Schaaf's theft of Lenhart Company's property valued at $3,500 satisfies the requirement for felonious theft punishable as a Class III felony. See §§ 28-511(2) and 28-518(1).

Consequently, there is no merit to Schaaf's claim that his conviction for felonious theft by disposition is not sustained by sufficient evidence.

## EXCESSIVE SENTENCE

In his final assignment of error, Schaaf contends that his sentence to imprisonment for a term of 4 to 8 years is an abuse of discretion. "A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed." *State v. Kitt*, 232 Neb. 237, 240, 440 N.W.2d 234, 236 (1989). See, also, *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986). Schaaf asserts: "While if validly proven, the theft of over $400,000.00 should be considered a crime of great magnitude, perhaps, in Nebraska, it is not the type of crime that requires a long sentence of incarceration." Brief for appellant at 20. To dispel Schaaf's misconception about permissible punishment for felonious theft in Nebraska, suffice it to say that there is no abuse of discretion in the sentence imposed.

## CONCLUSION

Schaaf's conviction and sentence are affirmed.

AFFIRMED.

CAPORALE, J., dissenting in part.

I agree with the majority's conclusion that Victor Schaaf is guilty of theft, but that the value of the property stolen and for which he stands convicted is only $3,500, not $404,504 as found by the trial court.

My difficulty is that I cannot help but also conclude, notwithstanding the fact that any theft of over $1,000 is a Class III felony, Neb. Rev. Stat. § 28-518(1) (Reissue 1985), that reducing the amount of the theft by $401,004 significantly alters one of the bases the trial court presumably considered in imposing its sentence. See *State v. Richter*, 220 Neb. 551, 371

N.W.2d 125 (1985) (nature of the offense one of factors to be considered in determining appropriate sentence).

I am not unmindful that notwithstanding the fact the additional $401,004 cannot be considered in resolving the issue of Schaaf's guilt, it could nonetheless be considered in determining an appropriate sentence. *State v. Jordan*, 229 Neb. 563, 427 N.W.2d 796 (1988). It therefore may well be that the trial court would impose the same sentence even in the face of the altered basis of Schaaf's conviction. The problem is that we do not know that such would have been the case; it therefore seems to me that Schaaf ought to have the opportunity to address that issue with the court which has the initial responsibility of exercising its discretion in determining an appropriate sentence.

Accordingly, I would affirm the conviction but remand the cause to the district court for resentencing.