STATE OF NEBRASKA, APPELLEE, V. CLARENCE L. C. WILLIAMS, APPELLANT.

319 N.W.2d 748

Filed May 21, 1982. No. 81-603.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Clarence L. C. Williams (Williams), appeals from a judgment of the trial court, a jury having been waived, which found him guilty of two counts of possession of a firearm by a felon, in violation of Neb. Rev. Stat. § 28-1206 (Reissue 1979). Each count contained a further allegation that Williams was an habitual criminal as provided for in Neb. Rev. Stat. § 29-2221 (Reissue 1979). Upon proof being introduced at a subsequent hearing that Williams had been twice convicted of a crime, sentenced, and committed to prison, the trial court sentenced Williams on count I to a term of not less than 10 years' imprisonment, and on count II to a term of not less than 10 years' imprisonment, the sentence on count II to run concurrent with the sentence on count I. Williams now assigns as error that (1) the trial court erred in failing to dismiss the case due to the State's failure to provide Williams with a speedy trial, and (2) the court erred in finding the defendant guilty of both counts set out in the information. We find that Williams' claim with regard to the speedy trial is without merit, but that he is correct with regard to the matter of the two counts. For that reason, the judgment of the trial court is in part affirmed, and in part reversed and dismissed.

Turning first to the speedy trial issue, we find that Neb. Rev. Stat. § 29-1207 (Reissue 1979) provides as follows: "(1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.

"(2) Such six-month period shall commence to run from the date the indictment is returned or the information filed. . . .

. . . .

"(4) The following periods shall be excluded in computing the time for trial:

. . . .

"(b) The period of delay resulting from a continuance granted at the request *or with the consent of the defendant or his counsel. . . .*" (Emphasis supplied.)

The record in this case discloses that the information was filed on November 26, 1980, and therefore the 6 months would expire on May 26, 1981, except as may be extended by reason of any period to be excluded in computing the time for trial. The record further discloses that on January 26, 1981, Williams and his attorney appeared before the trial court and, at that time, consented to a continuance and waived his constitutional and statutorily recognized right to a jury trial and in lieu thereof asked to be tried to the court. Williams now contends that the request was conditioned upon the promise that he would be tried on February 6, 1981, and therefore should not be considered in computing the 6-month period for trial. An examination of the proceedings, however, will not support that position.

The brief statements between the court, Williams, and his counsel point up that the waiver was unconditional and absolute. The following facts are disclosed:

"THE COURT: This is the case of the State of Nebraska versus Clarence L. C. Williams. It's recorded in Docket 57 at Page 147. Mr. Gooch, the Court will recognize you.

"MR. GOOCH: If it please the Court at this time we come before the Court and ask for permission to waive the defendant's constitutional and statutorily recognized right to a jury trial.

"THE COURT: Mr. Williams, you understand that you do have a constitutional right and statutory right to a jury trial, be tried by citizens of this community as the trier of facts. You understand that

you have those constitutional rights from the jury system?

"THE DEFENDANT: I do.

"THE COURT: Your attorney has indicated that you wish to waive that right.

"THE DEFENDANT: I do.

"THE COURT: And not have it. And you would be tried by the judge alone then. Do you understand that, sir?

"THE DEFENDANT: I do.

"THE COURT: Now, the jury is present in Lancaster County at this time, and you are number two on my docket, which means that you'd probably come to trial sometime later this week should you want a jury trial. However, if you waive a jury trial I'm going to have to set this at a subsequent time after this jury term which will be in February and that would be on about — how long will it take to try this case?

. . . .

"THE COURT: I'm going to set this case for the last day of the jury trial here, which would be on February 6, *with the understanding that I might have to continue it if I'm still in jury trial. Is that agreeable with you?*

"THE DEFENDANT: Yes.

"THE COURT: I'm not telling you that I'll try it at that time, because if the jury's still going on I will not be able to. But if the jury is gone at that time the Court is willing to try it on February 6. *Otherwise this will have to go on for some period of time.* And we may be able to adjust our schedule to get you in relatively soon. *But I can't promise it to you. You understand that?*

"THE DEFENDANT: Yes, sir.

"THE COURT: And thereby you are waiving your right to a speedy trial. Do you understand that, Mr. Williams?

"THE DEFENDANT: Yes, sir.

"THE COURT: That's agreeable with you?

"THE DEFENDANT: Yes, sir." (Emphasis supplied.)

Williams had a right to waive a speedy trial and consent to a continuance as long as he was properly advised either by counsel or the court of his rights to a speedy trial. See, *State v. Kinstler,* 207 Neb. 386, 299 N.W.2d 182 (1980); *State v. Alvarez,* 189 Neb. 281, 202 N.W.2d 604 (1972); *State v. Johnson,* 201 Neb. 322, 268 N.W.2d 85 (1978).

It appears that the jury trial did not end in time for trial on February 6, 1981, and was continued again. On April 23, 1981, Williams again filed a request for a speedy trial. Assuming, but not deciding, that once a defendant has waived his right to a speedy trial he can thereafter withdraw that waiver and renew his request for trial, it is clear that the time between when the waiver is first made and the request to withdraw is subsequently made must be excluded in computing the time for trial. When that is done in this case, trial on July 27, 1981, was within the 6-month period. There is no merit to Williams' first assignment of error, and it is overruled.

The second assignment of error poses a more difficult problem. Williams was charged with two separate counts of possession of a firearm by a felon. The first possession is alleged to have occurred on November 3, 1980, and the second on November 7, 1980. The question which we must address is whether possession of a firearm by a felon on 2 separate days, absent any evidence that the weapon was out of his "possession" between those 2 days, is but one continuing offense or two separate offenses. The statute itself gives us little aid in that regard. Section 28-1206(1) simply provides: "Any person who possesses any firearm with a barrel less than eighteen inches in length or brass or iron knuckles and who has previously been convicted of a felony or who is a fugitive from justice commits the offense of

possession of firearms by a felon or a fugitive from justice." Neither the statute itself nor the history leading to its enactment gives us any indication as to whether the Legislature intended that each day constitute a separate offense or whether the offense is one which is considered in the law as a continuing offense. Certainly it would have been easy enough for the Legislature to have so provided if that was its intent.

The real question is whether the idea of "possession," within a criminal statute of this nature, contemplates a continuing offense as opposed to a single incident. A continuing offense is defined as a "continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences." 22 C.J.S. *Criminal Law* § 1 at 6 (1961).

While the word "possess" is not a word of precise definition, it is clear that "possess," when used in a criminal statute, means something more than momentary control. It has been held to mean "to have management, care, dominion, authority, and control, singly or jointly." See *United States v. Rhodes,* 433 F.2d 1307 (8th Cir. 1970). To possess a narcotic drug means to have actual control, care, and management of, and not a passing control, fleeting and shadowy in its nature. See, *United States v. Landry,* 257 F.2d 425 (7th Cir. 1958); *Pearson v. United States,* 192 F.2d 681 (6th Cir. 1951); *United States v. Wainer,* 170 F.2d 603 (7th Cir. 1948).

It would seem to follow that the crime of "possession" may be brief, if complete, or it may extend over a period of time, if uninterrupted. To hold otherwise would make it near impossible to deter-

mine when the "possession" commenced and when it terminated. Absent a statute to the contrary, the ability to determine when a criminal act commenced and when it terminated appears essential in order to determine when a subsequent crime occurs. Certainly an arrest and indictment would be sufficient to interrupt possession so that a subsequent possession would constitute another crime. 22 C.J.S., *supra,* § 281.

Our conclusions with regard to this issue are influenced by the decision of the U.S. Supreme Court in *Bell v. United States,* 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (1955). In *Bell* the petitioner was indicted on and pleaded guilty to two counts for violation of the Mann Act, each count referring to a different woman. Petitioner had transported both women on the same trip in the same vehicle. In holding that petitioner had committed but one offense and was therefore not subject to cumulative punishment, the Court said at 83-84: "It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it— when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving

grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.''

The reasoning of the *Bell* decision is persuasive. In the instant case, the court must either declare that a given unit of time constitutes a separate offense or arbitrarily establish a period of time which constitutes each separate offense. There appears no basis for doing so. If the Legislature desires to take such action, it is at liberty to do so, but the courts, as noted by *Bell*, are not.

While no Nebraska cases have been cited to us concerning this matter and we are unable to find any, there are several federal decisions which are helpful in the decision of this case. In *United States v. Jones,* 533 F.2d 1387 (6th Cir. 1976), the U.S. Court of Appeals for the Sixth Circuit was asked to pass upon the federal ''possession of a firearm by a convicted felon'' statute. In holding that possession of a firearm by a felon over a series of days was but a single offense and not multiple offenses, the court said at 1390-91: ''The question whether a continuing offense exists is a question of statutory construction, since Congress has the power to punish different aspects of the same crime. . . .

''While we found no federal authority either for the proposition that possession of a contraband item is a continuing offense, or for the proposition that possession of a contraband item at different times and places can constitute separate offenses, we find the reasoning in *In re Snow,* 120 U.S. 274, 281, 7 S. Ct. 556, 559, 30 L. Ed. 658, 661 (1887), to be persuasive in

determining whether a continuing offense existed in the present case.

"In *Snow* the defendant had followed Mormon custom in sharing marital felicity with seven wives. A federal statute prohibited cohabitation of a man with more than one woman in federal territories, including Utah, where he lived. He was charged in a three-count indictment with illegal cohabitation; each count covered a different period of time. The first count charged continuous cohabitation during 1883; the second count charged the same during 1884; and the third count charged the same for the first eleven months of 1885. The Court held that illegal cohabitation is an inherently continuing offense, and that the government could not arbitrarily divide the offense into separate time periods and multiply the penalty.

"It is true that in the case at bar the Government is claiming that Jones possessed the pistol on three separate occasions, not that continuous possession existed which has been broken down into arbitrary time period. With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life. The fact that the Government merely has proof that he possessed the same weapon on three separate occasions, rather than continuously for a three-year period, should not dictate the result that Jones could receive three times the punishment he would face if continuous possession for a three-year period were proved. There is no proof that there was any interruption in the possession by Jones of the weapon.

"The English case of *Crepps v. Durden,* Cowper 640 (K.B.1777), discussed in *Snow,* illustrates the principle that acts constituting a course of conduct are not punishable separately if the Legislature intends to punish the course of conduct. There a baker made and sold loaves of bread on the Sabbath

in violation of a statute prohibiting the practice of one's trade on the Lord's day. He suffered four convictions, but Lord Mansfield's opinion set aside three of them, holding that regardless of how many loaves he baked or how many hours he worked, only one offense could occur on any given Sunday.

"Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm. If Congress had wished to punish each act of dominion it could have done so easily by forbidding the acts of dominion instead of the course of conduct."

Likewise, in the case of *United States v. Kinsley,* 518 F.2d 665 (8th Cir. 1975), the U.S. Court of Appeals for the Eighth Circuit held that the possession by a felon of several firearms was but one offense. In so holding, the court said at 666-67: "The allowable unit of prosecution for a federal offense is set by Congress. When Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused. This settled rule of federal criminal law has received its most celebrated expression in *Bell v. United States,* 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (1955). . . . .

. . . .

"Significantly, in many of the cases in which the courts have found a *Bell*-type ambiguity, the object of the offense has been prefaced by the word 'any.' Seemingly this is because 'any' may be said to fully encompass (*i.e.,* not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." The court therefore concluded that the possession of several firearms was but a single violation of the statute.

It would appear that where, as here, the posses-

sion of a firearm by a felon, actual or constructive, is uninterrupted, it constitutes but a single offense. For that reason, the trial court was in error in finding Williams guilty on both counts. Having found Williams guilty of possession on November 7, 1981, the court should have found that all prior possessions disclosed by the evidence were included in that conviction and should have sentenced Williams only on the second count. For that reason, the court's finding of guilt on count I is reversed and the complaint is dismissed. In all other respects, the judgment and sentence of the court are affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.