offered at the hearing. There is no means of assessing related costs to Busch. The Commission's assigned error on cross-appeal is without merit.

## CONCLUSION

We conclude that none of Busch's assignments of error have merit. The record reflects that the Commission acted within its jurisdiction in affirming Busch's termination from his job, and its decision was supported by sufficient, relevant evidence. We find that the Commission's cross-appeal is also without merit.

AFFIRMED.

───────────────

CITY OF BEATRICE, STATE OF NEBRASKA, APPELLEE,
v. DANIEL A. MEINTS, APPELLANT.
___ N.W.2d ___

Filed March 11, 2014.    Nos. A-12-1083 through A-12-1107.

1. **Constitutional Law: Search and Seizure: Appeal and Error.** Whether historical facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
2. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
3. **Constitutional Law: Statutes: Judgments: Appeal and Error.** The constitutionality and construction of a statute are questions of law, regarding which an appellate court is obligated to reach conclusions independent of those reached by the court below.
4. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.
5. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications.
6. **Warrantless Searches: Search and Seizure: Proof.** In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement.

7. **Warrantless Searches.** The warrantless search exceptions recognized by the Nebraska Supreme Court include (1) searches undertaken with consent or with probable cause, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

8. **Police Officers and Sheriffs: Search and Seizure: Evidence.** A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself.

9. **Constitutional Law: Warrantless Searches: Search and Seizure: Police Officers and Sheriffs.** The Fourth Amendment's prohibition against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause to conduct a warrantless search without consent.

10. **Search and Seizure: Probable Cause.** Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.

11. **Judgments: Appeal and Error.** Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

13. **Ordinances: Presumptions.** All ordinances are presumed to be valid.

14. **Municipal Corporations: Ordinances: Statutes.** The power of a municipality to enact and enforce any ordinance must be authorized by state statute.

15. **____: ____: ____.** Where there is a direct conflict between a municipal ordinance and a state statute, the statute is the superior law. However, if the ordinance and statute in question are not contradictory and can coexist, then both are valid.

16. **Municipal Corporations: Courts.** The general rule is that courts should give great deference to a city's determination of which laws should be enacted for the welfare of the people.

17. **Statutes.** The meaning of a statute is a question of law, and statutory language is given its plain and ordinary meaning.

18. **Criminal Law: Statutes.** Whether a particular course of conduct involves one or more distinct offenses under a statute depends on how a legislature has defined the allowable unit of prosecution.

19. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeals from the District Court for Gage County, Daniel E. Bryan, Jr., Judge, on appeal thereto from the County Court for Gage County, Steven B. Timm, Judge. Judgment of District Court affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Gregory A. Butcher, Beatrice City Attorney, for appellee.

Moore, Pirtle, and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

Daniel A. Meints appeals the order of the district court for Gage County affirming in part and reversing in part an order of the Gage County Court.

## BACKGROUND

Meints was charged on June 21, 2011, with 12 separate counts of violating Beatrice City Code § 16-623 (2002) on 25 separate dates in the months of May and June 2011. On September 19, Meints filed a "corrected" motion to suppress evidence, and the matter was heard in the county court for Gage County on October 3. All matters were consolidated for the purpose of the hearing.

Steve Printy, a code enforcement officer for the City of Beatrice, testified. One of his job requirements is to look for or monitor unregistered motor vehicles. Printy testified that on March 15, 2011, he observed Meints' Beatrice property from the public street. He found motor vehicles with expired license plates, motor vehicles with no license plates, and motor vehicles whose engines, wheels, or parts had been removed, altered, damaged, or otherwise allowed to deteriorate so that the motor vehicle was not capable of being driven on its own power. He did not observe a residence, fencing, or closed buildings on March 15. He took pictures of the property from the public street, the adjacent alley, and the adjacent property not owned by Meints. Printy did not enter Meints' property and did not seize any objects or evidence. Printy repeated this process on 15 separate dates between May 23 and June 17. Printy testified that the purpose for the visits was to observe the property and reinspect for junk or unlicensed motor vehicles.

Joe McCormick of the Beatrice Police Department testified that on March 15, 2011, he was dispatched to Meints'

Beatrice property and observed motor vehicles with expired license plates, vehicles with no license plates, and vehicles in an inoperable condition. McCormick testified he made these observations from the public street and did not observe a residence, fencing, closed buildings, or "no trespassing" signs. McCormick testified that he believed Meints was in violation of the Beatrice City Code regarding unregistered motor vehicles and that he had probable cause to enter the property. He entered the property, took photographs of the motor vehicles at issue, and recorded vehicle identification numbers (VIN numbers). McCormick did not enter any vehicles, open any car doors, enter any structures, move any items, or seize any objects while obtaining VIN numbers and taking photographs.

McCormick returned to Meints' Beatrice property on May 23, 2011, and made similar observations. He testified that the condition of the property was the same except that there was a "no trespassing" sign attached to a tree. Meints was present and informed McCormick he did not want him on his property. On that day also, McCormick believed Meints was in violation of the city code and he had probable cause to enter. He entered the property to take photographs and record VIN numbers to determine whether there were violations of the city code. Again, McCormick did not enter any vehicles, open any car doors, enter any structures, move any items, or seize any objects while obtaining VIN numbers and taking photographs. McCormick issued a citation to Meints for violations on May 23 and subsequently repeated this process, with the same observations for probable cause and further citations issued, on 10 additional dates between May 23 and June 16.

Meints cross-examined Printy and McCormick and offered evidence, including a copy of a discovery response by Meints containing McCormick's police reports from May 15 to 23, 2011, photographs of the motor vehicles in question, and registration printouts for the vehicles based upon VIN numbers. The trial court overruled Meints' motion to suppress after the submission of briefs by the parties.

On January 18, 2012, Meints filed a "Motion for Leave to Withdraw Plea," a "Motion to Quash," and a "Plea in Bar," 2 days prior to trial. The trial court overruled the motion for leave to withdraw on January 20, noting Meints had ample opportunity to raise the issue prior to trial.

At trial on January 20, 2012, McCormick and Printy both testified, as did several other officers. McCormick testified that on March 15, 2011, he was dispatched to Meints' Beatrice property and there witnessed vehicles with expired or no license plates. He believed that he had probable cause to obtain VIN numbers which were in plain view, and he ran those numbers through the "NCJIS" computer system of "Beatrice communications" to review Department of Motor Vehicles records. The court received an exhibit which contained an image log and photographs taken by McCormick on March 15. McCormick returned to the property on May 23, 24, and 27 through 29 and June 6, 7, 10 through 12, and 16 to inspect the property, take photographs, and record VIN numbers of the 10 vehicles in continual violation of the city code.

Printy testified he observed the same 10 vehicles in violation on May 23 through 27 and 31, 2011, as well as June 3, 6 through 10, and 15 through 17. Two other officers made similar observations on June 8 and 9 and on May 25, 26, 30, and 31, as well as June 3, 4, 13, and 14, respectively.

On March 30, 2012, the trial court found Meints guilty on all counts across all dates and overruled Meints' motion to quash and plea in bar. Meints appealed this matter to the district court for Gage County on May 16. The matter was heard in the district court on September 6. Evidence was adduced, exhibits were offered and received, and arguments were submitted by brief. On October 19, the district court affirmed the trial court's decisions on counts I through X across all 25 dates. The district court reversed the trial court's findings of guilt as to counts XI and XII across all 25 dates and ordered that the case be remanded to the county court with directions to dismiss on those latter two counts. Meints appealed the decision of the district court on November 19.

The 25 cases were consolidated at trial and on appeal to the district court. Cases Nos. A-12-1083 through A-12-1107 are also consolidated for purposes of this appeal.

## ASSIGNMENTS OF ERROR

Meints asserts the court erred in overruling Meints' suppression motion, finding that the city's proof was sufficient to find him guilty, failing to find that § 16-623 of the Beatrice City Code is invalid, and finding that Meints' multiple prosecutions under the city code did not violate the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.

Meints also asserts the court erred in overruling Meints' plea in bar, overruling Meints' motion to quash, overruling Meints' motion for leave to withdraw his earlier plea, and not finding that § 16-623 is unconstitutional. However, these issues were not addressed in Meints' brief and will not be addressed on appeal. See *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

## STANDARD OF REVIEW

[1] An appellate court applies a two-part standard of review to suppression issues. With regard to historical facts, the court reviews the trial court's findings for clear error. "[W]hether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination." *State v. Bromm*, 285 Neb. 193, 197, 826 N.W.2d 270, 274 (2013).

[2] The meaning of a statute is a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 2359, 185 L. Ed. 2d 1082 (2013).

[3] The constitutionality and construction of a statute are questions of law, regarding which we are obligated to reach conclusions independent of those reached by the court below. See *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012).

[4] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination

thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ross*, 283 Neb. 742, 811 N.W.2d 298 (2012).

## ANALYSIS

*Motion to Suppress*.

Meints asserts the county court should have granted his motion to suppress the observations and photographic evidence collected by the officers on his property. Meints asserts that he did not give consent for anyone, including code enforcement or police officers, to enter his property and that he had a reasonable expectation of privacy. He asserts the property containing the motor vehicles was subject to an unlawful search and seizure. Therefore, he asserts, all photographs and observations of his property should have been suppressed.

There is no dispute that the officers entered the property without a warrant to record VIN numbers and take photographs. The trial court in this case found, and the district court affirmed, that the warrantless entry and "seizure" of VIN numbers were justified under the open fields exception.

The open fields exception states that the special protection accorded by U.S. Const. Amend. IV to the people in their "persons, houses, papers, and effects" is not extended to open fields. *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 98 (1924). The U.S. Supreme Court has held that neither probable cause nor a warrant is required to carry out police searches of open fields. *Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). The Court held that the touchstone of Fourth Amendment analysis is the question of whether a person has a constitutionally protected, reasonable expectation of privacy. *Id*. The Nebraska Supreme Court has held that the asserted expectation of privacy in open fields is not an expectation that society recognizes as reasonable, as these lands are usually accessible to the public and police in ways that a home, an office, or a commercial structure would not be. *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986). The court in *Havlat* applied the exception to a warrantless

search of a grain and livestock operation on a fenced property. In doing so, the court discussed the open fields exception in the context of rural areas where the cultivation of crops, hunting, and fishing occur.

Meints argues that the open fields exception is inapplicable here because the property in question was located within the city. Without deciding whether the open fields exception applies here, we approach this appeal by first examining the law with regard to warrantless searches and seizures.

[5,6] Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011). In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement. *Id*.

[7] The warrantless search exceptions recognized by the Nebraska Supreme Court include (1) searches undertaken with consent or with probable cause, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id*.

The city asserts the search of Meints' Beatrice property was appropriate, because the vehicles and license plates were in plain view and the officers had probable cause to enter the property.

[8] A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself. *Id*.

While the vehicles and some of the license plates were observable in plain view from the sidewalks where the officers had a legal right to be, VIN numbers were not. The plain view doctrine would not justify the recording of VIN numbers and the taking of photographs, because such were obtained only after the officers went onto Meints' property. We therefore turn to an examination of whether law enforcement in this case

had probable cause to conduct the warrantless search without Meints' consent.

[9,10] The Fourth Amendment's prohibition against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause to conduct a warrantless search without consent. *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013), citing *State v. Borst, supra*. Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Beatrice City Code § 16-621 (1999) defines a "junked motor vehicle" as follows:

> A motor vehicle on which the engine, wheels or other parts have been removed, altered, damaged or otherwise so treated or allowed to deteriorate that the motor vehicle is incapable of being drawn under its own power. A motor vehicle which does not have an unexpired license plate or plates affixed thereto shall be presumed to be a junked motor vehicle; provided, that such presumption may be rebutted.

McCormick testified that when he arrived at Meints' Beatrice property, he stood on a public street. From this location, he could observe motor vehicles with expired license plates, vehicles with no license plates, and vehicles in inoperable condition. These vehicles fit the definition in § 16-621 of junked motor vehicles, and there is a presumption based on such observations that the property owner was in violation of the city code. McCormick testified that he believed Meints was in violation of the Beatrice City Code regarding unregistered motor vehicles and that he believed he had probable cause to enter the property to take photographs and record VIN numbers of the vehicles, which VIN numbers were to be used to search for the corresponding records within the Department of Motor Vehicles' database to confirm the registration status of each vehicle.

In light of these facts, and the provisions in the city code, it was reasonable for McCormick to believe that expired license

plates and the associated VIN numbers on the corresponding vehicles could be evidence of a crime, therefore affording him probable cause to lawfully enter the property to record this information.

McCormick testified that once he entered the property, he did not enter any vehicles, open any doors, enter any structures, move any items, or seize any objects while recording VIN numbers and photographing the property.

[11] Based upon our review of the evidence, we find McCormick and the Beatrice police officers had a legal right to be on a public street to observe the vehicles and the associated license plates. Several vehicles on the property could be observed from the street and could be presumed to be in violation of the city code. As stated above, McCormick's observations of expired license plates gave him probable cause to enter the property to record VIN numbers and take additional photographs to determine whether the photographs and observations were evidence of a crime; thus, he had a lawful right of access to the "seized" evidence. We find the county court properly overruled Meints' motion to suppress the photographs and observations of the officers, although for a reason which differs from that found by the trial court. Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. *State v. Huff*, 279 Neb. 68, 776 N.W.2d 498 (2009).

[12] Having found that the warrantless search was undertaken with probable cause, we need not address the lower courts' findings that the open fields exception to the prohibition of warrantless searches and seizures existed in this case. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Jimenez*, 283 Neb. 95, 808 N.W.2d 352 (2012).

*Sufficiency of Evidence.*

Meints was charged with violating § 16-623 of the Beatrice City Code ("[p]arked, junked or unregistered motor vehicles") on occasions constituting 12 counts over 25 separate days.

Section 16-623(a) of the city code states, in part:

It shall be unlawful for any person to park, store, leave or permit the parking, storing or leaving of any junked motor vehicle, or parts of a motor vehicle, on private property within the city for a period of time in excess of twenty-one (21) days. It shall be unlawful for any person in charge or control of any private property within the city, whether as owner, tenant, occupant, lessee or otherwise, to allow any motor vehicle which has been unregistered for more than twenty-one (21) days to remain upon any private property. Any motor vehicle allowed to remain on private property in violation of this subsection shall constitute a nuisance and shall be abated.

Meints asserts the city has not proved beyond a reasonable doubt that the vehicles were unregistered. He does not challenge that these were motor vehicles, upon his private property, all there in excess of the 21-day period, or that they remained there on 25 separate days after the expiration of the 21-day period. He also concedes that each vehicle on each date had either an expired license plate or no license plate at all. While he concedes the vehicles were not licensed, he asserts that the charge is lack of registration of the vehicles and that there is no evidence they were not registered.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ross*, 283 Neb. 742, 811 N.W.2d 298 (2012). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Id.*

In addressing this argument, both the county court and the district court found that the fact that a vehicle does not have a valid license plate is strong circumstantial evidence that the vehicle is also unregistered.

The Nebraska Revised Statutes provide that motor vehicle registration and license plates are regulated by the Motor

Vehicle Registration Act. Neb. Rev. Stat. § 60-389 (Reissue 2010) states that when a person applies for registration of a motor vehicle, "the department shall, upon registration, assign to such motor vehicle or trailer a distinctive registration number in the form of a license plate." Neb. Rev. Stat. § 60-3,100 (Reissue 2010) also states that the Department of Motor Vehicles shall issue to every person whose motor vehicle or trailer is registered two fully reflectorized license plates to be displayed on the front and back of each registered motor vehicle or trailer. The certificate of registration contains the same registration number denoted on the license plates. Neb. Rev. Stat. § 60-390 (Reissue 2010).

Several officers testified that they observed the lack of up-to-date license plates and that from that information, one could infer that the relevant vehicles on Meints' Beatrice property were unregistered. In addition, Beatrice police officers testified that they obtained VIN numbers for the vehicles observed on the property and searched a computer system for corresponding Department of Motor Vehicles records. Some of the vehicles were unregistered, some of them did not have identifiable VIN numbers, and some VIN numbers did not produce records within the system to obtain registration records.

The lack of up-to-date license plates, taken together with the condition of the vehicles, the lack of information in the Department of Motor Vehicles system, and the photographs and observations of the police officers on March 15, 2011, and continuing through May and June 2011, are sufficient for a rational trier of fact to find the essential elements of the crimes charged beyond a reasonable doubt. The district court did not err in affirming the decision of the trial court.

*Validity of § 16-623.*

Meints alleges the city code is invalid because it criminalizes conduct which is not criminal under the Nebraska Revised Statutes. He argues that the time limit in the state statute regulating unregistered vehicles is 30 days, that the limit in the Beatrice City Code regulating the same is 21 days, and that there is therefore an irreconcilable conflict which makes the city ordinance unenforceable.

[13-15] All ordinances are presumed to be valid. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996). However, the power of a municipality to enact and enforce any ordinance must be authorized by state statute. *State v. Loyd*, 265 Neb. 232, 655 N.W.2d 703 (2003). Where there is a direct conflict between a municipal ordinance and a state statute, the statute is the superior law. See *id*. However, if the ordinance and statute in question are not contradictory and can coexist, then both are valid. *Jacobson v. Solid Waste Agency of Northwest Neb*., 264 Neb. 961, 653 N.W.2d 482 (2002).

As it is written, § 16-623 of the Beatrice City Code prohibits the storage of junked or unregistered vehicles for more than 21 days and labels any vehicle so stored as a nuisance.

Meints asserts the city's ordinance reflecting a 21-day period for storage of unregistered motor vehicles is in conflict with the Nebraska Revised Statutes. He cites to five Nebraska statutes which permit the operation, towing, or parking of motor vehicles or trailers without registration for up to 30 days: Neb. Rev. Stat. §§ 60-362 (Reissue 2010), "[r]egistration required; presumption"; 60-365 (Reissue 2010), "[o]peration of vehicle without registration; limitation; proof of ownership"; 60-366 (Reissue 2010), "[n]onresident owner; registration; when; reciprocity"; 60-376 (Reissue 2010), "[o]peration of vehicle without registration; In Transit sticker; records required; proof of ownership"; and 60-3,164 (Reissue 2010), "[o]peration or parking of unregistered vehicle; penalty."

Meints fails to take into account that §§ 60-362, 60-365, and 60-3,164 apply to motor vehicles or trailers operated, parked, or towed *on the highways of this state*; § 60-366 governs registration requirements for a narrow group of nonresidents of this state; and § 60-376 governs the operation of a vehicle without registration while the vehicle is in transit. The city ordinance is not in conflict with the Nebraska statutes cited by Meints, because the ordinance is specifically geared toward vehicles parked, stored, or left on private property within the city, not on public roads within the state. As the city ordinance is not in conflict with the statutes, they may coexist.

Meints also alleges the ordinance criminalizes that which is not criminal under the Nebraska Revised Statutes. Meints concedes that the city has discretion to determine what constitutes a nuisance, but asserts that the city may not categorize something that is lawful under the Nebraska statutes to be a nuisance in Beatrice.

[16] The city is authorized by Neb. Rev. Stat. § 18-1720 (Reissue 2012) to "define, regulate, suppress and prevent nuisances, and to declare what shall constitute a nuisance, and to abate and remove the same." The Nebraska statutes do not address or regulate the placement or open storage of unlicensed, unregistered, or junk motor vehicles upon private property. This falls within the discretion of the city, as authorized by § 18-1720. In addition, the district court also notes that a similar ordinance regulating and prohibiting junked vehicles was upheld by the Nebraska Supreme Court in *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993). The general rule is that courts should give great deference to a city's determination of which laws should be enacted for the welfare of the people. See *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989).

For the reasons stated above, we find that this assignment of error is without merit.

*Double Jeopardy.*

Meints asserts his multiple prosecutions for violations of § 16-623 of the Beatrice City Code violate the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. Meints questions the city's authority to pass an ordinance which allows a separate offense for each day a violation occurs, but cites no authority for this assertion.

As we noted, previously, § 18-1720 grants all cities in Nebraska the power and authority to define, regulate, suppress, and prevent nuisances; to declare what shall constitute a nuisance; and to abate and remove the same. Every city and village is authorized to exercise such power and authority within its zoning jurisdiction.

[17] The meaning of a statute is a question of law, and statutory language is given its plain and ordinary meaning. See *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012). An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id*.

The plain meaning of § 18-1720 is that the Legislature gives permission to each city to define, regulate, suppress, and prevent nuisances as they are defined by each city. Beatrice chose to define a nuisance as one existing on each separate day in excess of a 21-day period, and its city code stated that each day's violation thereof is a distinct offense.

We note that Meints was on notice that the vehicles on his property constituted a violation of the city code. Code enforcement officer Printy and Beatrice police officers visited Meints' Beatrice property on March 15, 2011. On March 23, Printy sent Meints a "Notice to Remove" letter informing him that he was in violation of the Beatrice City Code. The letter contains the language of § 16-623(a) and the definition in § 16-621 of a "junked motor vehicle" discussed above. The letter concludes with a warning, stating:

> If the vehicle is not removed by the date specified . . . a citation will be issued requiring you to appear in court. The penalty for this offense is a fine of a minimum of $100 up to a maximum fine of $500.00 per vehicle. A different citation may be issued for each day that the violation continues.

Beatrice police returned to the property on May 23, 2011, well after the designated 21 days had passed, and the officers found that the property remained in the same condition. After ascertaining that the same vehicles were present, McCormick issued a citation. This process continued on 10 additional dates through June 16.

Meints had ample notice that he was in violation of the city code, and he was informed that each day could, and often did in fact, result in another citation. Meints was aware that Printy visited the property and that Beatrice police officers

entered the property and issued citations. Meints was given over 2 months to abate the cited nuisance, and he failed to do so.

Meints asserts acts constituting a course of conduct are not punishable separately if the Legislature intends to punish the course of conduct. See *U.S. v. Horodner*, 993 F.2d 191 (9th Cir. 1993). He cites to *U.S. v. Jones*, 403 F.3d 604 (8th Cir. 2005), which states the court's belief that Congress intended the crime of possession to refer to a course of conduct, rather than individual acts of dominion, and its ultimate conclusion that the continuous possession of the same firearm constitutes a single offense.

[18] The Nebraska Supreme Court has stated that whether a particular course of conduct involves one or more distinct offenses under a statute depends on how a legislature has defined the allowable unit of prosecution. *State v. Al-Sayagh*, 268 Neb. 913, 689 N.W.2d 587 (2004). The Nebraska Supreme Court considered whether two separate counts of possession of the same firearm were two distinct violations, based on the statutory language, in *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982). The court stated:

> Neither the statute itself nor the history leading to its enactment gives us any indication as to whether the Legislature intended that each day constitute a separate offense or whether the offense is one which is considered in the law as a continuing offense. Certainly it would have been easy enough for the Legislature to have so provided if that was its intent.

*State v. Williams*, 211 Neb. at 655, 319 N.W.2d at 751.

In this case, the intent of the drafters of the Beatrice City Code is clear, and the "allowable unit of prosecution" is clearly defined. The ordinance explicitly states that each day a violation of any of its provisions continues shall constitute a distinct offense and be punishable as such.

Further, multiple sections of the Nebraska Revised Statutes contain provisions detailing separate offenses for each day upon which they continue. The following are a few examples: Neb. Rev. Stat. §§ 12-512.08 and 12-618 (Reissue 2012) (perpetual care), 71-5733(3) (Reissue 2009)

(Nebraska Clean Indoor Air Act), 46-266 (Reissue 2010) (irrigation works), 60-6,373 (Reissue 2010) (vehicle emissions), 71-6329 and 71-6331 (Reissue 2009) (Residential Lead-Based Paint Professions Practice Act), and 71-6312 (Reissue 2009) (Asbestos Control Act). As the trial court pointed out, if such provisions were not in place, the practical effect would be that one who once pays a fine has been granted license to maintain a perpetual nuisance.

Meints also asserts the Double Jeopardy Clause was violated by citing him for multiple vehicles based upon identical 21-day periods without registration. The language of the city code states, "Any motor vehicle allowed to remain on private property in violation of [§ 16-623(a)] shall constitute a nuisance and shall be abated." By stating that any vehicle so stored constitutes a nuisance, it appears that the drafters intended to allow each nuisance to be separately cited and abated.

We find that Meints' prosecution for the continual violation of the city code by storing multiple vehicles beyond the 21-day period specified in the city code did not violate the Double Jeopardy Clause of the Fifth Amendment.

*Remaining Assignments of Error.*

[19] To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

Meints also asserts the trial court erred in overruling Meints' plea in bar, overruling Meints' motion to quash, overruling Meints' motion for leave to withdraw his earlier plea, and not finding that § 16-623 is unconstitutional. These errors were assigned but not argued in Meints' brief; therefore, we do not consider these errors upon appeal.

## CONCLUSION

Upon our review, we find that the district court did not err in affirming the decision of the trial court finding Meints guilty of 10 counts of violating § 16-623 of the Beatrice City Code on 25 separate days. We find that Meints' Fourth Amendment

rights were not violated and that there was sufficient evidence to support the trial court's finding that Meints was guilty on such counts beyond a reasonable doubt. We find that the Beatrice City Code does not contradict state law and does not criminalize conduct which is lawful under any state statute. We also find that multiple prosecutions for the violations of the Beatrice City Code do not violate the Double Jeopardy Clause of the Fifth Amendment. We affirm the decision of the district court.

Affirmed.

––––––––––––––

Stacy Bolles, wife of Gregory Bolles, deceased, on her behalf and on behalf of others eligible for benefits pursuant to Neb. Rev. Stat. § 48-122 et seq., appellee, v. Midwest Sheet Metal Co., Inc., appellant.

___ N.W.2d ___

Filed March 11, 2014.    No. A-13-203.

1. **Workers' Compensation: Judgments: Evidence: Appeal and Error.** Under Neb. Rev. Stat. § 48-185 (Reissue 2010), a judgment of the Workers' Compensation Court may be modified, reversed, or set aside based on the ground that there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award.

2. **Workers' Compensation: Appeal and Error.** In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court will not disturb the findings of fact of the trial judge unless clearly wrong.

3. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence is considered in the light most favorable to the successful party, every controverted fact is resolved in favor of the successful party, and the successful party has the benefit of every inference that is reasonably deducible from the evidence.

4. **Workers' Compensation: Judgments: Evidence: Appeal and Error.** Workers' Comp. Ct. R. of Proc. 11(A) (2011) requires the Workers' Compensation Court to write decisions that provide the basis for a meaningful appellate review.

5. **____: ____: ____: ____.** Workers' Comp. Ct. R. of Proc. 11(A) (2011) requires the judge to specify the evidence upon which the judge relies.